IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | Civil Action No. |
| $538,686.45, MORE OR LESS,<br>IN U.S. CURRENCY,<br>　　　　　Defendant. | §<br>§<br>§<br>§ | A16CV0282 RP |

## VERIFIED COMPLAINT FOR FORFEITURE

NOW COMES Plaintiff United States of America, by and through the U.S. Attorney for the Western District of Texas, pursuant to Rule G, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure, and respectfully states as follows:

### I. NATURE OF THE ACTION

1. This action is brought by the United States seeking forfeiture to the United States of the following property: **$538,686.45, More or Less, in U.S. Currency (hereinafter collectively referred to as "Defendant Property").**

### II. STATUTORY BASIS FOR FORFEITURE

2. This is a civil forfeiture action *in rem* brought against the Defendant Property for violation of 18 U.S.C. § 1343 (wire fraud) and subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C) and (D), which state:

> **§ 981. Civil Forfeiture**
> (a)(1) The following property is subject to forfeiture to the United States:
> ....
> (C)  Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

(D)  Any property, real or personal, which represents or is traceable to the gross receipts obtained, directly or indirectly, from a violation of-
(vi) section 1343 (relating to wire fraud)…

## III. JURISDICTION AND VENUE

3.  Under 28 U.S.C. § 1345, the Court has jurisdiction over an action commenced by the United States, and under 28 U.S.C. § 1355(a), the Court has jurisdiction over an action for forfeiture. This Court has *in rem* jurisdiction over the Defendant Property under 28 U.S.C. §§ 1355(b) and 1395.

4.  Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1) because the acts or omissions giving rise to the forfeiture occurred in this District. *See also* 28 U.S.C. § 1395(b).

## IV. FACTS IN SUPPORT OF FORFEITURE

**A.  The Primary Parties.**

5.  There is a local nonprofit organization that builds affordable-housing communities in the Austin area and then provides on-site support services for residents ("the Victim Nonprofit"). The Victim Nonprofit is currently in the process of building a new apartment community in Austin, Texas.

6.  The General Contractor for the new community project is Spaw Glass Contractors, Inc. ("Spaw Glass"). The Victim Nonprofit had been making construction-draw payments to Spaw Glass by mailing checks to the company.

7.  Alkebulan International USA, LLC ("Alkebulan") is a domestic company registered in the State of Nevada since 2014. There are three officers named in the Secretary of State documents.

8. Detective Matthew Conley of the Austin Police Department ("APD") is a full time member of the U.S. Secret Service-sponsored Central Texas Financial Crimes Task Force ("the Task Force").

**B.   The "Spear Phishing" Scheme.**

9. Spear phishing is an e-mail spoofing scheme that targets a specific organization, seeking unauthorized access to confidential data or directing the recipient to unwittingly act in furtherance of the underlying scheme. Typically, an email is sent to the recipient organization that appears to be from a known or trusted sender, but the sender is in fact an unknown perpetrator. Email addresses are usually either sent from the organization's email server after the sender obtains unauthorized access to that server or sent from the sender's email address which is masked to appear to be from a known sender.

10. On September 30, 2015, S.W. (an Accounts Payable employee for the Victim Nonprofit) received a phone call from a person believed to be a Spaw Glass employee. The person informed S.W. that future construction-draw payments needed to be sent in the form of bank wire transfers to the Spaw Glass account at JP Morgan Chase.

11. A.C. (the Chief Financial Officer for the Victim Nonprofit) later requested wiring instructions from the person that A.C. believed was calling from Spaw Glass. After a series of such phone calls, the calls were followed by an email from accounts@SpawGlass-contractors.com which contained written wire transfer instructions for future construction payments to be sent to JP Morgan Chase account #XXXXXX7917.

12. On October 23, 2015, S.W. initiated a wire transfer from the Victim Nonprofit's bank account to the aforementioned JP Morgan Chase account in the amount of $578,026.31 for payment to Spaw Glass.

13. While communicating with legitimate Spaw Glass personnel on November 3, 2015, regarding the receipt of the last payment of $578,026.31, A.C. learned that no payment had been received and that the JP Morgan Chase account where the funds were wired did not belong to Spaw Glass. It was discovered that no one from Spaw Glass had previously called the Victim Nonprofit or had sent emails to the organization requesting bank wire payments.

14. On November 4, 2015, Information Technology employees for the Victim Nonprofit discovered that the email address from which the wire transfer instructions were attached was from a deceptively similar domain name (*i.e.* SpawGlass-contractors.com, instead of SpawGlass.com). It was learned that the domain name was registered the day before the email was sent (*i.e.* October 7, 2015) through a domain hosting company in Canada by an unknown person. The email was transmitted from an Internet Protocol address resolving to a server maintained by Amazon.com, Inc. located in Ashburn, Virginia, but it is unknown from where the email was transmitted before being routed through the Amazon.com, Inc. server.

15. The Victim Nonprofit contacted the APD about the fraudulent scheme. The case was assigned to Det. Conley. On November 5, 2015, Det. Conley contacted JP Morgan Chase. Det. Conley learned that the account that received the Victim Nonprofit's funds was not held in the name of Spaw Glass and further that, shortly after the wire for $578,026.31 was received, the funds were systematically wired to foreign accounts, including an account held at a bank in Abu Dhabi, United Arab Emirates.

16. On November 9, 2015, a State Court Search and Seizure Warrant for the remaining funds present in the JP Morgan Chase account was signed and approved. At the time, law enforcement investigators believed that only $164,575.40 remained of the original $578,026.31 wire transfer. The seizure warrant targeted the remaining funds in account

#XXXXXX7917, which was the account that the Victim Nonprofit had wired the $578,026.31. At the time of the issuance of the warrant, the name of the JP Morgan Chase account holder was unknown, and it was only known that the account did not belong to Spaw Glass.

17. On November 19, 2015, Det. Conley learned that the JP Morgan Chase account was held in the name of Alkebulan International USA, LLC. Det. Conley learned that the bulk of the funds wired into JP Morgan Chase account #XXXXXX7917 were subsequently transferred into a linked checking account: #XXXXX1677. From the linked checking account, the funds were then wired to two overseas accounts in Japan and in Abu Dhabi, United Arab Emirates. Det. Conley also learned that a $29,000 cash withdrawal was made at a JP Morgan Chase branch located in Fontana, California and further that over $10,000 had been withdrawn through debits, checks, and ATM withdrawals from the account.

18. Detective Conley later learned that the funds which had been wire transferred to the two overseas accounts in Japan and Abu Dhabi were reversed by the receiving banks and were credited back to the linked checking account #XXXXX1677. Therefore, on November 24, 2015, a new State Court Seizure Warrant was prepared and approved so that those funds could be seized by investigators.

19. Through the investigation, Det. Conley learned that Alkebulan was registered in the State of Nevada in 2014. Based upon open source and social media research, the managing members of the limited liability company appear to be Nigerian, and the addresses for the three listed officers are the same. Investigators believe that Alkebulan is not a legitimate business and exists only "on paper." Further, the business account at JP Morgan Chase belonging to the company had virtually no activity and no funds prior to the Victim Nonprofit's incoming wire transfer. The account appears to have been established for the sole purpose of furthering wire

fraud schemes. These schemes are typically perpetrated by actors that are overseas, often times in Western Africa and/or Nigeria, and the stolen funds are ultimately received by them after having been laundered through domestic and/or international funnel accounts for the purposes of adding layers of concealment between the initial theft of funds and the end-recipient.

20. As a result of the new seizure warrant, on December 1, 2015, the Task Force received a cashier's check from JP Morgan Chase for $538,686.45 (*i.e.* the remaining amount from the $578,026.31 wire transfer sent by the Victim Nonprofit).

21. The U.S. Secret Service (USSS) applied for a federal seizure warrant to seize the Defendant Property as property subject to forfeiture. On January 25, 2016, a United States Magistrate Judge authorized the seizure warrant, and the Defendant Property was seized from state jurisdiction and placed into federal jurisdiction.

22. Based on the foregoing facts and circumstances, the United States submits that a reasonable belief exists to believe that the Defendant Property is subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C) and (D) as the Defendant Property was involved in, constitutes, or is derived from proceeds traceable to the knowing violation of 18 U.S.C. § 1343 (wire fraud).

## V. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff United States of America prays that due process issue to enforce the forfeiture of the Defendant Property, that due notice, pursuant to Supplemental Rule G(4), be given to all interested parties to appear and show cause why forfeiture should not be decreed,[1] that a warrant for an arrest in rem be ordered, that the Defendant Property be forfeited to the United States of America, that the Defendant Property be

---

[1] Appendix A, Notice of Complaint for Forfeiture, which is being filed along with this complaint, will be sent to those known to the United States to have an interest in the Defendant Property.

disposed of in accordance with the law, and for any such further relief as this Honorable Court deems just and proper.

                                        Respectfully submitted,

                                        RICHARD L. DURBIN, JR.
                                        UNITED STATES ATTORNEY

By:      */s/ Daniel M. Castillo*
                                        DANIEL M. CASTILLO
                                        Assistant United States Attorney
                                        Texas State Bar No. 00793481
                                        816 Congress Avenue, Suite 1000
                                        Austin, Texas 78701
                                        Tel: (512) 916-5858
                                        Fax: (512) 916-5854
                                        Email:   Daniel.Castillo@usdoj.gov

                                        ATTORNEYS FOR PLAINTIFF,
                                        UNITED STATES OF AMERICA

## VERIFICATION

I, David Konopczyk, declare as follows:

1.I am a Special Agent with the United States Secret Service. I am assigned to the Austin Resident Office and am the investigator responsible for the accuracy of the information provided in this litigation.

2.I have read the above Verified Complaint for Forfeiture and know the contents thereof. The information contained in the Verified Complaint for Forfeiture has been furnished by official government sources, and based upon information and belief, the allegations contained in the Verified Complaint for Forfeiture are true.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on the __9__ day of March, 2016.

*[signature]*
David Konopczyk, Special Agent
United States Secret Service
Austin Resident Office